JACK K. LARABEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Larabee v. Commissioner
Docket No. 18928-87.
United States Tax Court
T.C. Memo 1989-298; 1989 Tax Ct. Memo LEXIS 310; 57 T.C.M. (CCH) 755; T.C.M. (RIA) 89298; June 19, 1989. Jack K. Larabee, pro se. John R. Keenan, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in petitioner's Federal income tax for 1983 and 1984 in the respective amounts of $ 10,135 and $ 8,133, and additions to tax under section 6661 [1] for each year. The primary issues for decision are whether petitioner is entitled to additional net operating loss and interest *311 expense deductions. FINDINGS OF FACT Petitioner resides in Knoxville, Tennessee. The issues in this case relate to alleged losses arising from petitioner's ownership of cattle and to interest allegedly paid by petitioner to a personal friend. Beginning in 1972, petitioner decided to "learn the cattle business." In 1973, petitioner and his wife entered into what petitioner described as a partnership with a Mrs. Arvazine K. Slate and her husband with regard to the purchase of cattle. The Slates soon withdrew from the partnership, but petitioner apparently continued to pay for the advice of Mrs. Slate as a cattle consultant. In June of 1976, due to a series of financial and operational problems in the conduct of petitioner's cattle business, all of the cattle petitioner owned at that time (apparently numbering 600 head), as well as farming equipment petitioner owned, were foreclosed on and sold by or through the Production Credit Association of Kentucky. After *312 expenses of the foreclosure sale and after petitioner's creditors were paid, no sales proceeds remained for distribution to petitioner. The loss of petitioner's cattle and farming equipment gave rise to the realization by petitioner of a substantial operating loss for 1976. On June 1, 1977, petitioner apparently purchased for $ 165,000 several hundred additional head of cattle. On or about that date, petitioner entered into what he refers to as a "master cattle purchase contract" with Mrs. Slate. This purported contract was a very general written statement indicating, at most, an intention on the part of petitioner to issue a series of installment notes in favor of Mrs. Slate. The purported contract did not describe the amount of the notes to be issued, the total debt obligations to Mrs. Slate, nor the nature of the transaction that gave rise to petitioner's obligation to issue the notes. The master cattle purchase contract with Mrs. Slate, however, appears to relate to petitioner's June 1, 1977, purchase of cattle. In June of 1977, as contemplated by the cattle purchase agreement with Mrs. Slate, petitioner issued in favor of Mrs. Slate a series of 50 or 60 promissory notes, *313 each in the principal amount of approximately $ 1,000. In July or August of 1977, the Production Credit Association of Kentucky again foreclosed on petitioner's cattle, and again, after expenses and creditors were paid, petitioner realized nothing from the foreclosure sale. Also, in spite of the purported security interest in the cattle which she allegedly had sold to petitioner, Mrs. Slate received nothing from this foreclosure sale. The foreclosure sale of the cattle in 1977 allegedly gave rise to an operating loss for petitioner in the amount of $ 360,000. In 1978, petitioner moved to Austin, Texas. In 1978 or 1979, petitioner passed the CPA exam and began teaching college-level accounting courses in Texas. In 1980, petitioner suggested to Mrs. Slate that she move from her then residence in Knoxville, Tennessee to Austin, Texas, purchase a home in Austin, and allow petitioner to live in the home with her. Petitioner also suggested to Mrs. Slate that she allow him to use a portion of the home as an accounting office. Mrs. Slate agreed to the proposed arrangement, purchased the home in Austin, and moved into the home with petitioner. Petitioner and Mrs. Slate, who previously *314 had divorced her husband, lived in the home in Austin from 1980 through 1985. Although the purported promissory notes given to Mrs. Slate called for monthly payments of principal and interest, from 1980 through 1985 petitioner allegedly made payments on the notes in an unconventional manner. As explained, during those years, both petitioner and Mrs. Slate resided together in Austin, Texas. Throughout each year, Mrs. Slate and petitioner allegedly would discuss the bills and expenses relating to the joint residence they were maintaining. Petitioner states that he often paid grocery bills, utility and phone bills, and other miscellaneous bills and expenses relating to the residence. Petitioner also states that he paid many of Mrs. Slate's personal bills and expenses such as personal credit card bills. Petitioner claims that at periodic intervals throughout the year, he and Mrs. Slate added up the total of the personal bills and expenses petitioner had paid on Mrs. Slate's behalf, and Mrs. Slate credited that amount against petitioner's various alleged obligations to Mrs. Slate (namely, personal and office rent attributable to petitioner's use of Mrs. Slate's home, and principal *315 and interest due on the promissory notes). Petitioner alleges that the portion of the total payments he made on Mrs. Slate's behalf that was credited to interest on his notes to Mrs. Slate was $ 4,625 in 1983 and $ 5,441 in 1984. Petitioner has not submitted adequate verification or documentation of the manner by which he and Mrs. Slate allocated the total bills and expenses he allegedly paid in 1983 and 1984 on behalf of Mrs. Slate between the different obligations he allegedly owed Mrs. Slate. On petitioner's 1983 individual Federal income tax return, petitioner claimed a net operating loss carryover deduction of $ 31,567, arising from the claimed 1977 net operating loss of $ 360,000, and an interest deduction of $ 4,625 relating to the alleged interest payments to Mrs. Slate. On his 1984 individual Federal income tax return, petitioner claimed a net operating loss carryover deduction of $ 25,368, arising from the claimed 1977 net operating loss, and an interest deduction of $ 5,441 relating to the alleged interest payments to Mrs. Slate. On audit, respondent allowed petitioner net operating loss carryforward deductions for 1981 and 1982, arising from net operating losses *316 incurred in petitioner's cattle business in 1975 and 1976. Respondent, however, disallowed the 1977 claimed net operating loss in its entirety and the loss carryforward deductions claimed with respect thereto for 1983 and 1984. Respondent also disallowed the interest expense deductions claimed by petitioner for 1983 and 1984 with respect to the alleged note payments to Mrs. Slate, and respondent imposed the section 6661 addition to tax for each year. OPINION Petitioner's entitlement under section 172 to the claimed net operating loss carryforward deductions in 1983 and 1984 and his entitlement under section 163 to the claimed interest expense deductions are dependent upon a showing by petitioner that he incurred the claimed net operating losses in 1977 and that he incurred the claimed interest expenses in 1983 and 1984. Petitioner has the burden of proof with regard to these issues. Rule 142(a); ; ; . Petitioner's evidence on these issues was disorganized, confusing, and inadequate to convince us that *317 he is entitled to the claimed losses or interest expenses. Petitioner may have incurred losses in 1977 from his cattle business. On the record presented, however, we are unable to verify that fact or the amount of the loss. Petitioner's books and records are incomplete. The nature of the 1977 transaction by which petitioner allegedly purchased cattle from Mrs. Slate for $ 360,000 is unclear. Of particular concern to us is the nature and validity of petitioner's liability on the numerous $ 1,000 promissory notes purportedly associated with the transaction. The evidence concerning the payments on the notes is equally confusing and suspect. We find petitioner's testimony to be incredible concerning the manner by which he, a CPA, intentionally commingled his payments of Mrs. Slate's personal bills and expenses with alleged payments of his debt obligations. At trial we were particularly bothered by petitioner's failure to call Mrs. Slate as a witness even though petitioner communicated with her by telephone during the trial, and even though petitioner otherwise apparently had Mrs. Slate's cooperation. Petitioner's failure to call Mrs. Slate as a witness gives rise to a presumption *318 that, if called, her testimony would have been adverse to petitioner on the issues before us. See , affd. . For the reasons stated, we sustain respondent's disallowance of the claimed net operating loss and interest expense deductions. With regard to the substantial underpayment and addition to tax under section 6661, petitioner has not offered any specific argument other than that the tax deficiencies are erroneous. Having sustained respondent's tax deficiencies, we also sustain the section 6661 additions to tax. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩